IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BALL,** | : | **Civil No. 1:11-CV-1265** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **C.O. STRUTHERS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM  OPINION

### I.      Statement of Facts and of the Case

#### A.      Dawn Marie Ball's Litigation History

In many ways, Dawn Ball's current circumstances inspire continuing sorrow and concern.  Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7.) Furthermore, Ball is also an inmate who has reported to the court that she engages in multiple episodes of destructive, self-defeating and senseless behavior.

Much of this institutional misconduct is marked by disturbing, excretory behavior.  Indeed, a constant refrain throughout many of Ball's lawsuits is her

fascination with her own bodily wastes.  For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself, her clothes, her property, and her cell, as well as her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.).   In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

Ball is a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball currently has more than 25 lawsuits pending before this court.[1]  Ball is

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v.

also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits

dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim

upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by

this plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball</u>

<u>v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the district

court dismissed this civil action, citing Ball's failure to exhaust her administrative

remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies
> with regard to the issues raised in the complaint. Plaintiff's failure to
> oppose the remaining Defendants' motion, which also seeks dismissal
> for failure to exhaust administrative remedies, renders the motion
> unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not
> properly before this Court and must be dismissed.

(Doc. 36, p.5.)

While, fairly construed, the district court's dismissal decision rested on exhaustion

grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal

---

<u>Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.);
<u>Ball v. Hummel</u>, No. 1:12-CV-814 (M.D.Pa.); <u>Ball v. D'Addio</u>, No. 1:12-CV-815
(M.D.Pa.) .

3

order itself went on to state that any appeal of this dismissal would be "deemed frivolous and not in good faith."   Ball v. SCI Muncy/, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6.)

Nonetheless, Ball appealed this ruling.  (Doc. 37.)  On July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action, noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to exhaust administrative remedies. We agree with the District Court's decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3.).  Thus, the court of appeals' ruling, like the district court's decision, was expressly based upon Ball's failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.).  This action was also dismissed by the district court, which on this occasion considered the merits of Ball's claims and explicitly concluded that Ball had failed to state a claim upon which relief could be granted. Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36.).  Therefore, this second dismissal involved a merits analysis of Ball's claims, and a determination that Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28

U.S.C. § 1915(g).  Ball appealed this dismissal order, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc 34.), but her appeal of this case was summarily denied by the court of appeals,  <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Docs 48.), and, on October29, 2010,  this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]  <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48.).

Ball then filed yet another lawsuit in the case of <u>Ball v. Butts</u>, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011.  <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1.)  On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted.  <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8.).  Ball appealed this dismissal.  <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10.).  On September 21, 2011,  the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and order spoke

---

[2]28 U.S.C. § 1915(e)(2)(B)(i) provides that: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010, ruling was tantamount to a declaration that this action was also frivolous.

unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball,

stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted).  To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002).  Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

 In addition to these dismissals, Ball currently has at least ten other cases[3]

pending before this court where there have been reports and recommendations issued,

or adopted, calling for dismissal of claims.

---

[3]Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.);  Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.).

## B.   Ball's Current Lawsuit

### 1.   Factual Background

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Ball instituted the current lawsuit. Ball's present lawsuit relates to the conditions of her confinement at SCI-Muncy during a one week period in June and July of 2011. (Doc. 1.) According to Ball's complaint, on four days–June 26, 2011 through June 29, 2011–she did not receive personal hygiene supplies. Ball also asserts that she did not receive breakfast on one occasion, on June 28, 2011, and was denied lunch on another date, June 29, 2011. (Id.) Furthermore, Ball alleges that medical staff were deliberately indifferent to her needs on June 29, 2011, when she experienced a single incident in which she vomited what she thought was blood. (Id.)

Like all inmates, Ball has a legal obligation to exhaust available administrative remedies before proceeding to federal court. In this case, Ball alleged in her complaint that she had not exhausted her administrative grievances because she had been placed on grievance restrictions at the time of these events. (Id.)

With respect to these allegations, the undisputed facts can be simply stated:[4]

## A.    Exhaustion of Grievances

The plaintiff, Dawn Ball is an inmate currently serving a sentence for forgery. (Doc. 89, ¶1.)  With respect to the matters set forth in this lawsuit,  Ball has filed no administrative grievances regarding any of the allegations in her complaint. (Id., ¶2.) Ball was, however, fully familiar with Department of Corrections grievance procedures in July 2011, which required inmates to grieve dispute with prison officials, having filed numerous grievances in the past.

Specifically, pursuant to 37 Pa. C.S. § 93.9, the Department of Corrections maintains a grievance system, which is conducted in accordance with Administrative Directive DC-ADM 804, entitled "Inmate Grievance System." DC-ADM 804 establishes procedures for review of inmate grievances and consists of a three-step process. See Booth v. Churner, 206 F.3d 289, 293, n. 2 (3d Cir. 2000).  This three-step process requires an inmate to file an initial grievance (Step One), an appeal to the

---

[4]The defendants moved for summary judgment in this case in April of 2012 and submitted a thoroughly documented statement of material facts in support of this motion.  (Docs. 87-90.)  Despite receiving an extension of time in which to respond to this motion, (Doc. 98.), Ball has not responded to the motion, or its factual recital, and the time for responding to this motion has now lapsed. Accordingly, pursuant to Local Rule 56.1 we will deem those factual statements which are supported by the evidentiary record and are undisputed by Ball to be undisputed for purposes of determining this motion.

Superintendent (Step Two), and a final appeal (Step Three) to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). To file an initial grievance, an inmate must submit to the Facility Grievance Coordinator a completed grievance form. Id. The inmate must specifically state any claims he or she wishes to make concerning violations of Department directives, regulations, court orders, or other law and state the relief sought. The grievance must be submitted within fifteen working days after the event in question. If the grievance is denied, the inmate may appeal within ten days to the Facility Manager. If the inmate is dissatisfied with the decision of the Facility Manager, she may then appeal to SOIGA within fifteen days of the Facility Manager's decision.

These prison rules also recognize that inmates may, on occasion, abuse this process, and provide a mechanism for curtailing frivolous grievance filings by prisoners. Specifically, pursuant to DC-ADM-804 Section 1, C, an inmate who files five or more frivolous grievances may be placed on grievance restriction for up to 90 days. (Doc. 89, ¶3.) In this case, on April 12, 2011, Ball was placed on a ninety day grievance restriction for having filed six frivolous grievances between March 24, 2011, and April 11, 2011. (Id., ¶ 4.) Under the terms of this restriction, Ball was limited to filing one grievance every fifteen working days. (Id., ¶5.) Ball's grievance restriction expired July 10, 2012. (Id., ¶6.) Because DC-ADM-804 provides inmates

with fifteen working days to file a grievance, Ball had until July 18, 2011, (fifteen working days from the June 26, 2011, which is the date of the first incident in the complaint) to grieve the issues she complains about in the complaint.  (Id., ¶ 7.) Thus, Ball could have waited until her grievance restriction expired on July 10, 2011, and still have timely grieved all of the matters she complained about in this lawsuit. (Id., ¶ 8.)

     In this case, Ball signed and dated her civil complaint on June 30, 2011, at a time when she still had ample opportunity to secure a grievance form and timely grieve the matters described in the complaint.  (Id., ¶9.)  Moreover, prison records affirmatively reveal that Ball did lodge grievances during the time period embraced by this lawsuit, contradicting her claim that she was unable to file grievances. Specifically, on July 1, 2011, Ball signed an unrelated administrative grievance, a grievance which was submitted by Ball the day after she signed her complaint in this lawsuit.  (Id., ¶10.)  In fact,  Ball admitted at her deposition that she had a grievance form available to her on July 1, 2011.  (Id., ¶11.)

## B.   Conditions of Confinement

     As to the conditions of Ball's confinement over the four-day span that is the subject of this lawsuit, the undisputed evidence further shows that, with respect to Ball's complaints concerning a lack of hygienic supplies, Ball had a towel, wash rag,

running water and linens in her cell, and possessed all of the personal supplies she required except soap, toothpaste, pads, and toilet paper.  (Id., ¶12.)  Ball further acknowledged that she received all of the supplies that she requested within four days, and that she had all of her personal hygiene supplies by June 30, 2011.  (Id., ¶13.)  Furthermore, regarding Ball's complaints concerning her meal service, although Ball alleged she was refused breakfast on June 28, 2011, she conceded she had lunch and dinner that day.  (Id., ¶14.)  In addition, while Ball alleged that she was refused lunch on June 29, 2011, she conceded she had breakfast and dinner that day. (Id., ¶15.)

### C.   Medical Treatment

Finally, as to Ball's complaints regarding her medical care, Ball alleged that, on June 29, 2011, after being denied a meal, she vomited blood.  (Id., ¶16.).  While Ball claimed that she showed the blood to Nurse Eskew, who is not a defendant in this lawsuit, Ball acknowledged that she never had any direct communication with the medical staff member she has sued, Nurse Temple.  (Id., ¶17.)  Instead, Ball has sued Nurse Temple because Ball believes that Temple was the head nurse who made the decision not to treat her.  (Id.)

At her deposition, Ball defined this incident in a very narrow and specific way, testifying that this  medical episode lasted a single day and that she stopped throwing

11

up blood later on June 29, 2011, after she ate a meal. (Id., ¶19.) Nurse Eskew, the only medical professional who had contact or communication with Ball on June 29, 2011, has also described a discrete, and minor, medical encounter, stating that on June 29 Ball showed her a tissue paper with a scant amount of dried, pink coloring on it. (Id., ¶ 20.) Although Ball claimed that the matter was blood, Eskew did not perceive it to be blood, but instead thought it looking like markings from a pink marker. (Id., ¶ 21.) Moreover, Ball did not appear to Eskew to be in any need of immediate or urgent medical care. (Id.,22.) Nonetheless, Eskew relayed her observations to the head nurse, Nurse Temple, and a decision was made that Ball did not need any emergency medical care. Instead, it was the judgment of medical staff that any medical issues Ball was experiencing could adequately be addressed by Ball signing up for sick call. (Id., ¶ 23.) Nurse Eskew advised Ball that if she had a similar problem, to let Eskew know immediately, and Ball never raised any further concerns with the nurse. (Id., ¶ 24.)

The prison, however, followed up on these concerns. Ball's medical records reflect that on July 5, 2011, Ball was seen by a physician at sick call due to a complaint about a cough. (Id., ¶ 26.) Ball also complained that day that she noticed some blood in her phlegm. (Id., ¶27.) Ball was diagnosed with pharyngitis (inflammation of the throat) and possible bronchitis. The physician ordered a chest

12

x-ray and sputum collection.  (Id., ¶28.)  The medical records reflect that Ball was then seen by a physician for the same complaint on July 7, 2011.  At that time, there was no blood noted in her sputum.  (Id., ¶29.)  A sputum sample was collected from Ball on July 11, 2011 and sent for testing.  The lab results showed moderate growth of a bacterium called Entrobacter Aerogenes.  (Id., ¶30.)  Ball's x-ray was taken on July 8, 2011.  The radiologist's report indicates that the x-ray results were normal. (Id., ¶31.)  Finally, the records reveal that Ball was prescribed antibiotics on July 26, 2011, and that Ball voiced show no further complaints regarding blood in sputum. (Id., ¶¶32-33.)

## 2.    Procedural History

On the basis of these uncontested facts, the defendants moved for summary judgment in their favor on April 16, 2012.  (Doc. 87.)  We initially directed Ball to respond to this motion by May 9, 2012, (Doc. 92.), but when Ball sought an extension of time in which to respond, (Doc. 96.), we extended Ball's respond deadline to June 18, 2012, some two months after the filing of this summary judgment motion. (Doc. 98.)

Ball has not complied with this motion response deadline.  Instead, on May 15, 2012, Ball sought to stay all of her multi-faceted federal court litigation, in an apparent effort to delay or avoid rulings in these cases on many ripe defense motions.

(Doc. 99.)  On May 15, 2012, we denied this request made by Ball, noting that there was something profoundly inconsistent in these pleadings, since Ball's motions began with factual averments which detailed a series of allegedly improper actions by prison officials,  allegations which if true required immediate attention by the courts.  (Doc. 100.)   Yet, while Ball recited facts which cried out for action by the courts, she sought relief which would not be in her interests, or in the interests of justice:  a complete cessation of this litigation.  (Id.)  Because we believed that we owed it to Ball, and to all of the many defendants she has sued, to promptly address the merits of her claims, on May 15, 2012 we denied Ball's first motions to generally stay all of Ball's litigation to some future date of her choosing.  Instead, we instructed Ball in clear and precise terms as follows:

> In the meanwhile Ball is directed to continue to comply with the filing deadlines previously set by this court and IT IS ORDERED that any future requests for continuance or stay must be made individually by Ball in each of her cases along with factual averments specific to each particular case explaining why a stay or continuance is necessary.

(Id.)

Presented with this clear instruction from the court, Ball then chose to ignore this guidance and filed another global stay request in all of her cases.  (Doc. 105.)  Indeed, in this second stay motion Ball endeavored not only to ignore the court's prior order, but to try to ignore the court altogether by instructing the clerk's office

to present these latest stay motions to another judge. (Id.)  Furthermore, Ball's motion sought more than a stay of future litigation, she also demanded that all orders in all of her cases entered since April 2012, be "revoked." (Id.)  We denied this second stay motion as well, (Doc. 107), and Ball allowed her filing response deadline on the instant summary judgment motion to lapse.  Thus, the motion is now ripe for resolution.  For the reasons set forth below, we recommend that the defendant's summary judgment motion be granted.

## II.   Discussion

## A.   Rule 56–The Legal Standard.

The defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law

15

will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." <u>Berckeley Inv. Group. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  <u>Celotex</u>, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  <u>Id.</u> at 252; <u>see</u> <u>also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial."  <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for

17

> summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561
> (E.D.Mo.1996). Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay.
> <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003).
> The mere possibility that a hearsay statement will be admissible at trial,
> does not permit its consideration at the summary judgment stage. <u>Henry</u>
> <u>v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books,</u>

Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it

> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that she is a *pro se* litigant. These rules apply with equal force to all parties. See <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure). Therefore, Ball's failure to comply with Local Rule 56.1 compels us to treat the failure to file a counter-statement as an admission of all the facts set forth in the movant's statement.

## B.    The Prison Litigation Reform Act's Exhaustion Requirement

The defendants first urge the court to grant summary judgment on the plaintiff's claims because Ball failed to fully exhaust the administrative remedies available to her under Department of Corrections procedures. In this case Ball's

alleged failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Ball grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies.  As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a

comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . .  In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, applying this procedural default component to the exhaustion requirement,  Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

Williams v. Pennsylvania Dep't. of Corrections, 146 F. App'x 554, 557(3d Cir. 2005).[5] Thus, "it is clear, regardless of the purpose of the requirement, that Spruill

_____

[5]While the Williams decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow." Drinker v.

requires the prisoner-grievant-plaintiff to name in the grievance those he eventually

sues, upon pain of procedural default."  Hemingway v. Ellers, No. 07-1764,  2008

WL 3540526, *11 (M.D.Pa. Aug.12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined

exception.  If the actions of prison officials directly caused the inmate's procedural

default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement.  See Camp  v. Brennan, 219 F.3d 279 (3d Cir. 2000).

However, case law recognizes a clear "reluctance to invoke equitable reasons to

excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49

F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be

excused "under certain limited circumstances", Harris v. Armstrong, 149 F. App'x 58,

59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by

showing "he was misled or that there was some extraordinary reason he was

prevented from complying with the statutory mandate." Davis v. Warman, supra,  49

F. App'x at 368.  See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002)

(assuming that prisoner with failure to protect claim is entitled to rely on instruction

by prison officials to wait for outcome of internal security investigation before filing

---

Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996). We find the reasoning
in Williams compelling, and recommend that this reasoning be extended to the
instant case.

grievance); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

Furthermore, it is entirely clear that the fact that Ball was under a grievance restriction pursuant to DC-ADM 804, does not, by itself, excuse her failure to grieve this matter prior to filing suit in federal court, since those Corrections policies plainly allow inmates to file a limited number of grievances.  Indeed, the United States Court of Appeals for the Third Circuit has rejected this precise argument in <u>Cummings v. Crumb</u>, 347 F. App'x 725, 727 (3d Cir. 2009), stating in that case that:

> [The inmate] also argued that he was denied the grievance process because he was on grievance restriction.  According to the Pennsylvania Department of Corrections Grievance Policy DC-ADM 804 Part IV.L, an inmate on grievance restriction is restricted to filing no more than one grievance every 15 days.  *Thus, being on grievance restriction would not have prevented [an inmate] from exhausting his remedies*.

<u>Cummings v. Crumb</u>, 347 F. App'x 725, 727 (3d Cir. 2009)(emphasis added).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion

requirement.  Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him.  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust her administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with state grievance procedures and timelines, as well as the basic requisite that the inmate identify those against whom she has a grievance during the administrative process before she may name these individuals as defendants in a federal lawsuit.

### C.   Ball Has Failed to Properly Exhaust Her Administrative Remedies

Judged against these guideposts, we find that the defendants are entitled to summary judgment in their favor on the grounds that Ball has failed to satisfy the PLRA's administrative exhaustion requirement.  In this case, with respect to the matters set forth in her complaint, it is entirely undisputed that Ball has never exhausted her administrative remedies.  Ball cannot claim she was unaware of this exhaustion requirement since it is clear that Ball was fully familiar with Department of Corrections grievance procedures in July 2011, having filed numerous grievances in the past, and Ball has previously had cases dismissed due to her failure to exhaust her administrative remedies.

Furthermore, we find that Ball has failed to carry her burden of proving "that there was some extraordinary reason [s]he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368.  Ball's bald assertion in her complaint that she was subject to a grievance restriction in June of 2011, standing alone, plainly does not carry this burden of proof since inmates on grievance restrictions are still entitled to file one grievance every fifteen days. Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009).  In fact, Ball's ability to file such grievances is not simply a regulatory hypothetical; in this case Ball actually filed a grievance on July 1, 2011, while under this grievance restriction, a fact which

demonstrates Ball's actual subjective knowledge concerning her ability to pursue and exhaust grievances at the time of the events set forth in this complaint.

Moreover, it is completely undisputed that Ball's grievance restrictions had been lifted by prison officials in sufficient time for her to fully grieve the matters set forth in this complaint.  Specifically, it appears that on April 12, 2011, Ball was placed on a ninety-day grievance restriction for having filed six frivolous grievances between March 24, 2011, and April 11, 2011.  (Doc. 89, ¶ 4.)  Under the terms of this restriction, Ball was limited to filing one grievance every fifteen working days. (Id., ¶5.)  Ball's grievance restriction expired July 10, 2012. (Id., ¶6.)  Because DC-ADM-804 provides inmates with fifteen working days to file a grievance, Ball had until July 18, 2011, fifteen working days from the June 26, 2011, which is the date of the first incident in the complaint, to grieve the issues she raised in her complaint (Id., ¶ 7.) Thus, Ball could have waited until her grievance restriction expired on July 10, 2011, and still have timely grieved all of the matters she complained about in this lawsuit. (Id., ¶ 8.)  Yet, despite these tools and resources at her disposal, Ball elected not to file the administrative grievances that are required by law.

On these facts, which are entirely undisputed, it is clear that Ball had ample opportunity to comply with the requirements of the PLRA by fully grieving these

28

matters.  Her failure to do so, therefore, is both unexcused, and inexcusable, and compels dismissal of this case.

### C.  Ball's Conditions of Confinement Claims Fail

Ball has also advanced a series of claims that can best be characterized as conditions of confinement claims, asserting that she did not receive two meals, and further protesting a three-day delay in obtaining personal hygiene products.  With respect to these claims, the guiding legal standards are clearly defined:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Applying this exacting standard which calls for the denial of the minimal civilized measure of life's necessities in a prison setting in order to state a claim, courts frequently rebuff inmate complaints like those made here relating to isolated instances of momentary discomfort for inmates, the denial of an occasional meal, or brief delays regarding provision of hygiene supplies, finding that those isolated claims do not state an infraction of a constitutional dimension.

Thus, with respect to prison diet complaints "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, <u>see</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals. <u>See</u> <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." <u>Laufgas v. Speziale</u>, 263 F. App'x. 192, 198 (3d Cir. 2008).   Nor does the presentation of  food in an unappetizing fashion, by itself, violate the Eighth Amendment.   Quite the contrary, with respect to this prison diets it is well-settled that: "[U]nappetizing food served in prison is not constitutionally actionable. <u>Maldonado v. McFaden</u>, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D.Pa. Nov. 23, 1994) ('[T]he Eighth Amendment requires only that inmates be provided food that is adequate to maintain health, and served in a sanitary manner.')." <u>Jones v. Beard</u>, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16, 2011).   Similarly, it is entirely clear that the conduct alleged here by Ball, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. <u>See</u> <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." <u>Lindsey v. O'Connor</u>, 327 F. App'x. 319, 321 (3d Cir. 2009).   Therefore, Ball's complaints regarding the presentation of her meals, and an alleged failure to provide two meals, simply do not rise to the level of a constitutional infraction.

Furthermore, courts have repeatedly rejected inmate Eighth Amendment claims, like those made here, which rest upon an isolated, and brief, alleged failure to provide personal hygiene supplies to a prisoner. See e.g., Banks v. Mozingo, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F. App'x 135 (3d Cir. 2011)(denying inmate claim involving 7-day alleged denial of hygienic material); Fortune v. Hamberger, 379 F. App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); Benjamin v. Fraser, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation); Stead v. Skinner, 10-4526, 2011 WL 3882809, *4 (N.D.Ill. Sept. 2, 2011). As the court of appeals has observed, such claims cannot rest upon "a mere isolated episode of inadvertence, but [instead require proof of] persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

In this case, given the uncontested facts, Ball's complaints relating to these specific conditions of her confinement do not amount to matters of constitutional dimension. Instead, these complaints amount to a brief delay in receiving some hygiene supplies, coupled with two instances in which Ball allegedly missed a meal. As a matter of law, such assertions do not state an Eighth Amendment claim, see e.g.,

Banks v. Mozingo, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F. App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of hygienic material); Fortune v. Hamberger, 379 F. App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009) ("purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation."), and these claims should also be dismissed.

### E.    Ball Has Failed To State an Eighth Amendment Deliberate Indifference Claim

Finally, Ball  has alleged that an individual prison care-giver, Nurse Temple, displayed deliberate indifference to her medical needs in a fashion which constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.   Ball faces an exacting burden in advancing this Eighth Amendment claim against prison medical staff in their individual capacities. To sustain such a claim, Ball must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate

> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429

U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Ball is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation.  Estelle, 429 U.S. at 106.  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).  Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has

been offered to the inmate.  Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.  See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely

a disagreement with the course of medical treatment and does not state a constitutional claim"); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and care-givers over alternate treatment plans, the inmate's complaint will fail as a constitutional claim; see e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F. App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same), since "the exercise . . . of . . . professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Judged against these standards, Ball cannot sustain an Eighth Amendment deliberate indifference claim against Nurse Temple, one of her prison health care providers. Indeed, in this case it is entirely undisputed that the plaintiff received care for the one June 29, 2011, episode of vomiting which forms the basis of this particular claim. That care was provided to Ball in several ways over time. First, Nurse Eskew, the only medical professional who had contact or communication with

Ball on June 29, 2011, has declared that on June 29 Ball showed her a tissue paper with a scant amount of dried, pink coloring on it. Although Ball claimed that the matter was blood, Eskew did not perceive it to be blood, but instead thought it looked like markings from a pink marker. Moreover, Ball did not appear to Eskew to be in any need of immediate or urgent medical care. Nonetheless, Eskew relayed her observations to the head nurse, Nurse Temple, and a decision was made that Ball did not need any emergency medical care, since any medical issues Ball was experiencing could adequately be addressed by Ball signing up for sick call. However, Nurse Eskew advised Ball that if she had a similar problem, to let Eskew know immediately, and Ball never raised any further concerns with the nurse. The prison then followed up on Ball's concerns over the next 30 days. Thus, on July 5, 2011, Ball was seen by a physician at sick call due to a complaint about a cough. Ball also complained that day that she noticed some blood in her phlegm, and was diagnosed with an inflammation of the throat and possible bronchitis. The physician ordered a chest x-ray and sputum collection for Ball, who was then seen by a physician for the same complaint on July 7, 2011. At that time, there was no blood noted in her sputum. A sputum sample was collected from Ball on July 11, 2011, and sent for testing, a test which showed moderate growth of a bacterium called Entrobacter Aerogenes. In addition, Ball's x-ray was taken on July 8, 2011, and the radiologist's report indicated

that the x-ray results were normal.  Finally, Ball was prescribed antibiotics on July

26, 2011, and voiced no further complaints regarding blood in her sputum.

All of this on-going care is undisputed in the factual record, and is fatal to

Ball's claim that Nurse Temple was deliberately indifferent to her medical needs.

Thus, in its present posture, Ball's Eighth Amendment claims should be dismissed

since those:

> [A]llegations merely amounted to a disagreement over the proper course
> of his treatment and thus failed to allege a reckless disregard with
> respect to his . . . care.  The standard for cruel and unusual punishment
> under the Eighth Amendment, established by the Supreme Court in
> Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two
> prongs: 1) deliberate indifference by prison officials and 2) serious
> medical needs.  "It is well-settled that claims of negligence or medical
> malpractice, without some more culpable state of mind, do not constitute
> 'deliberate indifference.' "  "Nor does mere disagreement as to the
> proper medical treatment support a claim of an eighth amendment
> violation." . . . . [The inmate] alleged no undue delay in receiving
> treatment and, as the district court noted, the evidence he presented
> established that he received timely care . . . . Although [an inmate
> plaintiff] may have preferred a different course of treatment, [t]his
> preference alone cannot establish deliberate indifference as such second-
> guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).[6]

_____

[6]We also note that Ball's curious choice of Nurse Temple as the named
defendant in this matter reveals another flaw in this case.  Ball apparently bases
her claim against this defendant, in part, upon Ball's perception of a hearsay
statement which she alleges Nurse Eskew made, and attributed to Nurse Temple.
Ball may not rely upon rank hearsay to create a factual issue for trial at this stage
of this litigation.  Quite the contrary, it is well-settled that:  "In this circuit, hearsay
statements can be considered on a motion for summary judgment [only] if they are

### F.    The Defendants Are Entitled to Qualified Immunity

Finally, we find that, even if Ball had stated a colorable claim for any actions relating to her conditions of confinement or medical care, the defendants would nevertheless be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Ball must show the deprivation of a right

_____

capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

secured by the United States Constitution or the laws of the United States.  Satisfying

these elements alone, however, does not guarantee that Ball is entitled to recover

damages from these public officials.  Government officials performing "discretionary

functions," are insulated from suit if their conduct did not violate a "clearly

established statutory or constitutional right[] of which a reasonable person would

have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v.

Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides

officials performing discretionary functions not only defense to liability, but also

"immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D.

Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity:

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson,555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. 231-32; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Id.  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, case law has repeatedly rejected inmate Eighth Amendment challenges to medical care, finding no deliberate indifference to serious medical needs where it is shown that the prisoner received on-going care and treatment.  See, e.g., Lasko v. Watts, 373 F. App'x 196, 203 (3d Cir. 2010); Hodge v. U.S.

43

Department of Justice, 2010 WL 1141387 (3d Cir. Aug. 2, 2010); Palmer v. Carroll, 640 F.Supp 2d. 542 (D.Del. 2009); Moshier v. United States, No. 05-180, 2007 WL 1703536 (W.D. Pa. June 11, 2007); Jordan v. Delaware, 433 F.Supp.2d. 433 (D.Del. 2006); Christy v. Robinson, 216 F.Supp.2d 398, 413 (D.N.J. 2002). Federal courts have also routinely held that medical disputes between physicians and prisoners over alternate treatment plans do not state an Eighth Amendment claim. See, e.g., Rodriguez v. Secretary Pennsylvania Dep't of Corrections, No. 10-3134, 2011 WL 3555424 (3d Cir. Aug. 12, 2011); Winslow v. Prison Heath Service, 406 F. App'x 671 (3d Cir. 2011);Guiddy v. Terhune, 90 F. App'x 592 (3d Cir. 2004). Finally, courts have consistently found that a brief delay in receiving some hygiene supplies, coupled with occasional missed meals, do not state an Eighth Amendment claim. See e.g.,Banks v. Mozingo, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F. App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of hygienic material); Fortune v. Hamberger, 379 F. App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009) ("purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.")

Given the state of the law in this field, which has consistently rebuffed inmate Eighth Amendment challenges like those presented here by Ball, the defendants simply could not have recognized that their actions would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, the defendants are entitled to qualified immunity on these claims.

## III.  Conclusion

Accordingly, for the forgoing reasons, the defendants' motion for summary judgment is GRANTED, this case is DISMISSED and the clerk is directed to CLOSE this file.

So ordered, this 19th day of July 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge